## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

LORIA PHARMACEUTICAL, LLC;   )
LORIA MANAGEMENT, LLC; LORIA   )
COMPOUNDING CONSULTANTS AND   )
STAFFING SERVICES, LLC; AND   )
LORIA PRODUCTS, LLC,   )
   )   Case No. 9-24-cv-80198
         Plaintiffs,   )
    v.   )
   )
MARK MEZZANCELLO;   )
PATRICIA MEZZANCELLO;   )
BEST MAN MANHATTAN FL, LLC;   )
BEST MAN MANHATTAN, LLC   )
BEST MAN MGT, LLC;   )
MANHATTAN BEST, LLC;   )
AMANUEL DANIACHEW, M.D.;   )
DAVID DELLINGER, D.O.   )
BRADLEY GOLDSMITH, M.D.; and   )
SAMANTHA HARRISON   )
   )
         Defendants.   )

## <u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT</u>

Defendants Mark Mezzancello, Patricia Mezzancello, Best Man Manhattan FL, LLC, Best Man Manhattan, LLC, Best Man Mgt, LLC, Manhattan Best, LLC, Amanuel Daniachew, M.D. ("Daniachew"), David Dellinger, D.O. ("Dellinger"), Bradley Goldsmith, M.D. ("Goldsmith"), and Samantha Harrison ("Harrison") (collectively "Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6), 12(e), and Local Rule 7.1, respectfully request that this Court dismiss the Complaint of Plaintiffs Loria Pharmaceutical, LLC ("Loria Pharma"); Loria Medical, LLC ("Loria Medical"), and Loria Medical of New York, PLLC ("LMNY"), (collectively "Plaintiffs") or, in the alternative, order Plaintiffs to provide a more definite statement as to their claims.

I.      **INTRODUCTION**

1.   Plaintiffs' Complaint is a Shotgun Pleading

Plaintiffs' Complaint, which asserts eleven (11) separate causes of action by three (3) plaintiffs against ten (10) defendants is deficient for a variety of reasons. As a threshold matter, the Complaint is, undeniably, a "shotgun pleading" violative of the Rules of Civil Procedure. First, the Complaint fails to clearly identify which of the respective Defendants the various causes of action are alleged against and which of the three plaintiffs is asserting which respective cause of action. Rather, Plaintiffs have, for the purpose of this lawsuit, fused together three separate legal entities (Loria Pharma, Loria Medical and LMNY) and attempts to interchangeably refer to all three entities as "Plaintiffs" throughout the Complaint. In doing so, Plaintiffs cause substantial confusion by paying no mind to which plaintiff-entity entered into any specified agreement, which plaintiff-entity is the holder of the intellectual property alleged to be at issue and which plaintiff-entity engaged in the courses of conduct alleged in the Complaint.

Plaintiffs' Complaint also lacks a clear indication as to whom the Plaintiffs are asserting which cause of action against. To that end, the Complaint appears to assert no specific cause of action as against named defendants Best Man Manhattan FL, LLC, Best Man Manhattan, LLC, Best Man Mgt, LLC, Manhattan Best, LLC, thus these parties should be dismissed from the case. Moreover, the only cause(s) of action seemingly asserted as against Patricia Mezzancello are those in which she has been summarily lumped in with her husband Mark Mezzancello as a "joint venturer," with the Complaint offering no clear indication as to how or why Patricia Mezzancello is an appropriate party to this action and with no specific actionable conduct attributed to her. She too should be dismissed from the case. Similarly, in the patent infringement and inducement of patent infringement claims (Counts VII and VIII) Plaintiffs improperly group together individual defendants Daniachew, Dellinger, Goldsmith, and Harrison and attempt to treat each of those

defendants all as one party, again failing to specify what specific actionable conduct is attributable to which defendant, despite the fact that there are few, if any, similarities between these parties.

The Complaint further creates confusion through its unclear pleading of irrelevant facts and allegations which serve to confuse the issues and the various alleged causes of action. As the Complaint is replete with contradictory, conclusory, vague, or immaterial facts not associated with any specific claim or any cause of action, Plaintiffs do not provide sufficient notice as to what specific actionable conduct gives rise to the alleged causes of action. Similarly, the Complaint fails to allege when any of the alleged actionable conduct took place. This is important, in part, because of a broadly worded general release between certain Plaintiffs and certain of the Defendants. Given the Complaints' lack of specificity as to timing, it is impossible to decipher which of the causes of action are subsumed by that release and which of the claims, if any, arose after that release.

2.   <u>Plaintiff Fails to Sufficiently State Causes of Action for Breach of Contract</u>

Count I, breach of contract alleged against Mark Mezzancello, generally refers to three agreements (the NY Bus. Agmt, the Addendum and the Separation Agreement which served to terminate those prior agreements), yet the Complaint fails to clearly specify which agreement has allegedly been breached and what conduct constituted said breach. Plaintiffs further complicate this alleged cause of action by making irrelevant allegations relating to a License Agreement which none of the Defendants ever entered into.  Here, the Separation Agreement served to terminate the NY Bus Agmt and Addendum and released any and all claims arising between Loria Pharma and Mark Mezzancello as of that date (March 17, 2023), thus clearly there can be no claim for breach of the NY Bus Agmt and Addendum and any allegations concerning these agreements or alleged breaches of them are irrelevant only serving to confuse the allegations of the Complaint. Such allegations should be stricken from the Complaint and Plaintiff must be required to identify what

3

agreement and what provision of that agreement is alleged to have been breached. Put simply, Plaintiffs fail to clearly state what contract was supposedly breached, when and how that breach allegedly occurred and what damages, if any, arise from the alleged breach, thus dismissal of Count I is warranted.[1]

Count II of the Complaint also must be dismissed as "Joint Venture" is not a right of action recognized by the Court, but rather is included as an alleged theory whereby Plaintiffs attempt to improperly name Patricia Mezzancello as a party in this case. Count II must also be dismissed.

Similar to the pleading of Count I, in Counts III through V, Plaintiffs also use vague language and conclusory facts which fail to specify exactly what agreement is claimed to exist between the plaintiffs and defendants Daniachew, Dellinger, Goldsmith. Plaintiffs further fail to allege when that breach purportedly occurred, how that alleged breach has occurred and any specific damages, if any arising from that breach. Counts III though V of the Complaint contain allegations that either multiple agreements existed or that the Defendants entered into "at least" one agreement, without specifying the exact agreement that is alleged to have been breached and when that breach occurred. If Plaintiffs are to be permitted to assert breach of contract claims against defendants Daniachew, Dellinger, Goldsmith, then at a minimum, Plaintiffs must identify which agreement(s) were allegedly breached, what constituted the alleged breach, and when that actionable conduct supposedly occurred. Should the Court elect not to dismiss the breach of contract claims alleged as Counts I, III, IV and V for their failing to state causes of action, at minimum, Plaintiffs should be required to make more definite statements pursuant to F.R.C.P. 12(e) with respect to the various breach of contract claims.

---

[1] Count XI is also duplicative of the Count I breach of contract claim in so far as it asks the Court to issue declaratory relief related to the Separation Agreement referenced in Count I.

As to Harrison (Count VI and named in Counts VII and IX), all claims against her are readily dismissible as Plaintiffs do not establish long-arm jurisdiction over Ms. Harrison, who is a New York-based former employee of Loria Medical.  Harrison, worked approximately eleven months for Plaintiff Loria Medical and has always been based out of New York. While working for Loria Medical, she worked in a laboratory facility in New York. She never had any dealings or interaction with the State of Florida or, for that matter, any of the other named Defendants in this case. Harrison continues to have no dealings in the State of Florida. Without even getting to the lack of merit for naming Harrison as a defendant, Plaintiffs have failed, as a threshold matter, to establish any "long-arm" jurisdiction which would allow for any claim asserted against Harrison to proceed in this forum. For this reason alone, the claims against Ms. Harrison must be dismissed.

3.  Plaintiffs' Remaining Claims Concerning Patent Infringement, Trade Secret Misappropriation and Tortious Interference are Defective.

Moving beyond the breach of contract claims, Plaintiffs' patent infringement claim (Count VII) fails to state a claim as to Plaintiffs Loria Medical and LMNY (hereinafter the "Unassigned Loria Parties"). It further stands to reason that should the alleged patent infringement claim(s) fail, so to do any cause of action alleging inducement of patent infringement (Count VIII). In addition, Plaintiffs' allegations do not satisfy the pleading requirements for trade secret misappropriation (Count IX) because they fail to adequately (1) describe the alleged trade secret, (2) the circumstances of misappropriation, and (3) the steps taken by Plaintiffs to ensure that the information Plaintiffs allege is secret is maintained as a secret.

More specifically, Plaintiffs allege both infringement of U.S. Patent No. 9,993,578 (the "578 Patent," attached hereto as **Exhibit A**) and misappropriation of trade secrets associated with the underlying technology. Notwithstanding the problem that patents and trade secrets are generally diametrically opposed to one another given the basic public policy of the patent system

being dedicated to disclosure rather than secrecy, Plaintiffs fail to articulate with enough specificity (1) what exactly was supposedly misappropriated by Defendants, (2) how Plaintiffs that do not have an ownership stake in the 578 Patent were injured by the alleged infringement of the 578 Patent, or (3) how infringement is even occurring given Plaintiffs' own formulation does not meet all of the claim requirements.

As further discussed below, the causes of action for tortious interference and declaratory judgment are also defective as plead and should be dismissed. Should the Court elect not to dismiss the causes of action set forth as Counts VII, VIII, IX and X, for their failing to state causes of action, at minimum, Plaintiffs should be required to make more definite statements pursuant to F.R.C.P. 12(e) with respect to each of these claims.

It is therefore respectfully requested that the Court dismiss the Complaint in its entirety or, at the very least, require Plaintiffs to provide a more definite statement as to its claims.

## LEGAL STANDARD

### i.     Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

To withstand a motion to dismiss under Fed. Civ. Pro. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Moreover, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. "Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). "A plaintiff must do more than merely label his or her claims." *Afkhami v. Carnival Corp.*, 305 F. Supp. 2d 1308, 1325 (S.D. Fla. 2004) (citing *Blumel v. Mylander*, 919 F. Supp. 423, 425 (M.D. Fla. 1996)).

ii.      **Motion for More Definite Statement Pursuant to Fed. R. Civ. P. 12(e)**

Federal Rule of Civil Procedure 12(e) provides:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order. Fed. R. Civ. P. 12(e).

"In considering such a motion, the Court should be mindful of the liberal pleading requirements of the Federal Rules of Civil Procedure, pursuant to which a 'short and plain statement of the claim' will suffice." *Betancourt v. Marine Cargo Mgmt., Inc.*, 930 F. Supp. 606, 608 (S.D. Fla. 1996) (quoting Fed. R. Civ. P. 8(a)(2)). "A motion for more definite statement is not a substitute for discovery." *Id.* A motion for a more definite statement will be granted if "'the pleading is so vague or ambiguous that the opposing party cannot respond in good faith or without prejudice to himself.'" *Hobbs v. BH Cars, Inc.*, 2004 WL 1242838, *2 (S.D. Fla. June 4, 2004) (quoting *Adelphia Cable Partners, L.P. v. E & A Beepers Corp.*, 188 F.R.D. 662, 665 (S.D. Fla. 1999))

## II.      <u>ARGUMENT</u>

i.      <u>Count I for Breach of Contract Should be Dismissed or a More Definite Statement Should be Provided</u>

A. <u>All Claims Arising Under the Terminated Contracts Have Been Released</u>

Mark Mezzancello and Loria Pharma entered into an agreement in December of 2021 for the purpose of establishing and operating a business to provide medical services in the State of New York (the "NY Bus. Agmt") (Dkt. 1-11). The NY Bus Agmt was later modified by an Addendum executed in August of 2022. (the "Addendum", and collectively with the NY Bus. Agmt, the "Terminated Agreements"). For a variety of reasons, the business arrangement between

Mark Mezzancello and Loria Pharma broke down and became unsustainable, prompting the parties to enter into a Business Separation Agreement dated March 17, 2023 (the "Separation Agreement") (Dkt. 1-13). Following the execution of the Separation Agreement Mark Mezzancello established a new business as a Management Services Organization ("MSO").[2]

The Separation Agreement served to terminate the Terminated Agreements and provided a full release of all claims between Loria Pharma and Mark Mezzancello as of the date of execution. Count I of the Complaint alleges breach of contract as between Plaintiffs and Mark Mezzancello.  As discussed above, it is an inherent failure of the Complaint that Plaintiffs fuse together three separate entities in making its allegations. Here, the only relevant contractual relationships which have ever existed were between Loria Pharma and Mark Mezzancello. Count I first allege that Plaintiffs and Mark Mezzancello entered into "NY Bus Agmt" and the Addendum thereto (Dkt. 1 at ¶¶ 43-44). The Complaint then discusses a "License Agreement" which was never entered into by any of the Defendants and proceeds to allege that Mark Mezzancello breached those agreements and is responsible for certain others not entering into the "License Agreement" (Dkt. 1 at ¶¶ 45-49). The allegations concerning any breach of the NY Bus Agmt, the Addendum thereto and the "License Agreement" are all invalidated by the terms of the Separation Agreement which was entered into on March 17, 2023 in order to "fully terminate and dissolve the prior Agreements and effectuate a full and final release of any and all claims each party may have against the other based on any Party's activities occurring before the Effective Date [March 17, 2023]." (Dkt. 1-13).

---

[2] MSOs are commonly a for-profit business corporation that provides the medical practice with a wide range of services and items needed by the practice. These can include office premises, medical and office equipment, and personnel and support services normally required for the operation of a medical practice.

Count I of the Complaint effectively ignores that Loria Pharma and Mark Mezzancello released all disputes under the Terminated Agreements by execution of the Separation Agreement. The Complaint then proceeds to further alleges a breach of that agreement. (Dkt. 1 at ¶¶ 50-51). Given the terms of the Separation Agreement, Plaintiffs have no actionable claims arising from the Terminated Agreements and/or the "License Agreement" including any purported failures of third-parties not entering into said "Licensing Agreement." Any and all such claims must be dismissed with prejudice and with all factual allegations of any "breach" of those agreements Ordered to be stricken from the Complaint.

B. <u>Mark Mezzancello Has Not Violated the Separation Agreement Because He Cannot Hire Providers to Perform Medical Services on his Behalf in the State of New York</u>

Turning to the alleged breach of the Separation Agreement, Plaintiffs' sole allegation is that "the Separation Agreement required Mark M. to ensure that all providers execute the License Agreement and the Subscription Agreement" and that "the failure of providers to enter the foregoing agreements and comply with the provisions thereof cause damage to Plaintiffs." (Dkt. 1 at ¶50). However, looking at the language of the contract itself, the Separation Agreement states that Mark Mezzancello was to "ensure that all Providers working on behalf of Mezz to perform male enhancement services have executed the following agreements: (i) The current version of the Loria Pharma Independent Licensee And Service Agreement ("License Agreement"); and (ii) A Subscription Agreement to the Loria Physicians Group Operating Agreement." (Dkt. 1-13 at ¶2(b)).

A plain reading of the contract terms require only that Mark Mezzancello ensure that Providers working on his behalf enter into a license agreement with Loria Pharma. However, the contract term misconstrues Mark Mezzancello's role and presumes that Mark Mezzancello is practicing medicine by hiring "Providers" to practice medicine on his behalf. To be clear, Mark

Mezzancello is not practicing, and has never practiced, medicine in the State of New York – to do so would be a violation of the law. Under New York State law Mark Mezzancello, as a non-physician, is not legally permitted to practice medicine, this means he can neither perform medical procedures nor can he hire medical professionals to perform medical procedures *on his behalf*.

New York Business Corporation Law (BCL) Section 1507 authorizes a professional service corporation (PC) to issue shares: … only to individuals who are authorized by law to practice in this state a profession which such corporation is authorized to practice and who are or have been engaged in the practice of such profession. Similarly, New York Limited Liability Company Law (LLCL) Section 1207(b) requires that each member of a professional limited liability company (PLLC) formed to provide medical services must be licensed pursuant to New York Education Law (Ed. Law) Article 131 to practice medicine in New York. Article 131 permits only individuals to be licensed to practice medicine; it does not permit entities to be licensed to practice medicine. Therefore, the equity interests of any New York medical PLLC may be held only by individuals who are licensed to practice medicine in New York. Only a physician licensed to practice medicine may own an equity interest in a New York PC that provides medical services. No other PC or PLLC may own an equity interest in a New York PC that provides medical services.

Under New York law, the only state where Mark Mezzancello has ever engaged in any business operations relevant to the allegations of the Complaint, Mark Mezzancello cannot legally hire "Providers" to work on his behalf as the language in Separation Agreement contemplates. Accordingly, that contract term contemplates Mark Mezzancello violating the law of the State of New York and is therefore *void ab initio*, must be treated as a legal nullity and is an unenforceable action based upon the allegations of the Complaint. It is well settled hornbook law that "[C]ontractual provisions made in contravention of a statute are void and unenforceable."

*Everglades Ecolodge at Big Cypress, LLC v. Seminole Tribe of Fla.*, 836 F. Supp. 2d 1296, 1304 (S.D. Fla. 2011) (citing *California v. United States*, 271 F.3d 1377, 1383 (Fed.Cir.2001)).

At bottom, Mark Mezzancello holds a lease for a New York facility that operates as a Management Services Organization. In the State of New York, Mark Mezzancello is neither legally permitted to perform medical procedures nor is he legally permitted to hire physicians to perform any medical procedure on his behalf. Mark Mezzancello, therefore, cannot and has not, breached any terms of the Separation Agreement warranting the dismissal of Count I with prejudice.

As Mark Mezzancello has not breached the Separation Agreement, there is no basis for the relief sought in Count XI which seeks a declaratory judgment based upon Mark Mezzancello having allegedly breached the Separation Agreement. Furthermore, it is respectfully submitted that Count XI, is duplicative of Count I and is nothing more than a claim for breach of contract seeking alternative relief, as noted below Count XI, therefore should also be dismissed.

### ii. There is No Cause of Action for Joint Venture as Alleged in Count II

Count II of the Complaint, ¶¶52–55, assert *inter alia* that Mark and Patricia Mezzancello are a husband and wife and that they are "joint venturers in a broad range of industries," however these allegations do not: 1) set forth any cognizable cause of action; 2) establish joint and several liability with regard to Mark and Patricia Mezzancello; and/or 3) justify Patricia Mezzancello being named as a defendant in this action. Accordingly, Count II as alleged must be dismissed with prejudice.

### iii. Counts III through V Should be Dismissed Or A More Definite Statement Should Be Provided

As discussed above, Count III states that "Dr. Aman entered into several agreements…on or about February 22, 2022" and then goes on to state that Daniachew also signed an agreement on April 27, 2022 before alleging breach of agreement. (Dkt. 1 at ¶¶ 56-57). The pleading does

not state with specificity 1) what agreement exists between what parties; 2) what provision of the agreement is alleged to have been breached; 3) what conduct on the part of the defendant constitutes the breach; 4) when that alleged breach occurred, and 5) what damages, if any, exist as a result of the alleged breach. The only allegation in Count III made, is that "by performing…procedures using the Male Enhancement IP Portfolio…breached the 1099 Agreement." (Dkt. 1 at ¶60); However, even this allegation lacks specificity as it does not identify what alleged "intellectual property" was used and how the doctor's performing of procedures constituted a breach of the "1099 Agreement." Pleadings asserted in such form do not give fair and adequate notice to defendants as to the Plaintiffs' claims as is required under the law.  Counts IV and V similarly rely on vague assertions that Goldsmith and Dellinger "signed at least one agreement" before going on to allege a conclusory breach again failing to explain what exactly these doctors did wrong and what "intellectual property" these doctors wrongfully used. With respect to Dellinger, Plaintiffs only allege that a contract existed "upon information and belief," and thus Plaintiffs cannot even say with certainty that any agreement exists between these parties. It is axiomatic that if Plaintiff cannot, at least, allege let alone prove the existence of an agreement, then the alleged breach of contract claim against Dellinger must be dismissed with prejudice.

Plaintiffs' style of pleading is further complicated by the issue discussed above relating to the fusing of the parties and made worse by convoluted and confusing factual narrative set forth in the initial 42 paragraphs of the Complaint. Given the form of the pleadings and the deficiencies described above, it is not even feasible to address the lack of merit concerning the alleged breaches of contract.

### iv. <u>All Counts Against Samantha Harrison Must be Dismissed for Lack of Personal Jurisdiction</u>

As to Defendant Harrison, in Count VI, she is alleged to have breached a Non-Disclosure Agreement ("NDA"), however, there is no copy of that agreement attached among

the exhibits of the Complaint and it is unclear what, if any, basis Plaintiffs asserts personal jurisdiction over the out-of-state resident. Harrison. For one, Harrison does not reside in, and has not engaged in business in, Florida, nor is she alleged to have breached a contract in Florida. Harrison is not and has never been a resident of Florida. She has no contact with the State of Florida and thus there is simply no basis for jurisdiction over her in this lawsuit. She resides in and is employed in the State of New York and has had no involvement with any of the parties to this lawsuit beyond her 11-month tenure of employment with Loria Medical which ended December 31, 2022.

It is well settled that the determination of personal jurisdiction over a nonresident defendant requires a two-part analysis. *Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F.2d 829, 855 (11th Cir.1990); *Alexander Proudfoot Co.,* 877 F.2d at 919. First, we consider the jurisdictional question under the state long-arm statute. *Cable/Home Communication Corp.,* 902 F.2d at 855; *Alexander Proudfoot Co.,* 877 F.2d at 919. If there is a basis for the assertion of personal jurisdiction under the state statute, we next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)); *Cable/Home Communication Corp.,* 902 F.2d at 855; *Alexander Proudfoot Co.,* 877 F.2d at 919. Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant. *Army Times Publishing Co. v. Watts,* 730 F.2d 1398, 1408 (11th Cir.1984).

Here, for one, the Complaint does not plead any jurisdictional facts as to Harrison. Rather, the Complaint alleges that Harrison is believed to reside in New York and that she was employed as a lab technician mixing materials for procedures to be used in New York. (Dkt. 1 at ¶16). As further demonstrated by Harrison's declaration, attached hereto as Exhibit B, there is no basis for personal jurisdiction over Harrison. Plaintiff cannot establish personal jurisdiction either under the long-arm statute and thus all claims asserted against Harrison, including the alleged a) breach of contract b) patent infringement and c) theft of trade secret must be dismissed.

### v. **Count VII for Patent Infringement Should Be Dismissed Or A More Definite Statement Should Be Provided**

Title 35 allows a "patentee" to bring a civil action for patent infringement. 35 U.S.C. § 281. The term patentee includes the original patentee (whether the inventor or original assignee and "successors in title." 35 U.S.C. § 100(d). If the party asserting infringement is not the patent's original patentee, "the critical determination regarding a party's ability to sue in its own name is whether an agreement transferring patent rights to that party is, in effect, an assignment or a mere license." *Id.* at 1319. In distinguishing between "an assignment" and a "mere license," we "examine whether the agreement transferred all substantial rights to the patents." *Id*. (internal quotation marks omitted). If a party cannot bring suit in its own name, it may still bring suit along with the patentee so long as it possesses "exclusionary rights." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007).

Here, Plaintiffs fail to include any assignment of rights to the 578 Patent as exhibits to the Complaint to show ownership. A review of the 578 Patent's information at the United States Patent and Trademark Office reveals that the 578 Patent is solely assigned to Loria Pharma, "its legal representatives, and assigns as fully and entirely as the same would  have been held and

enjoyed by ASSIGNOR had no sale and assignment said interest been made." *See* **Exhibit A** (hereinafter the "578 Patent Assignment"). Given the 578 Patent Assignment makes no mention of the Unassigned Loria Parties, they cannot have standing to maintain a patent infringement cause of action against any of the Defendants. Even if the Unassigned Loria Parties have certain exclusionary rights, Defendants has no ability to ascertain what those rights may be given the lack of attachments accompanying the Complaint.

Furthermore, Plaintiffs are well aware that the male enhancement formula supplied by Dr. Loria to Defendants is NOT encompassed by the claims of the 578 Patent. Likewise, Defendants' alleged post-termination manufacture of the male enhancement formula is not encompassed by the claims of the 578 Patent and the manufacture, use or sale thereof does NOT infringe any of the claims of the 578 Patent. Claim 1 of the 578 Patent, the only independent claim, requires 20% to 99% water. Ex. A at 16:47. In addition, it also requires a silicone oil having a viscosity between 12,500 and 30,000 centistokes. *Id.* at 16:45-46. The 578 also requires thickening agent between 0.005% and 10% where a thickening agent is defined in the patent as being, for example, carboxymethylcellulose. *See id.* at 8:12-19, 16:48.

There can be no patent infringement where all of the claim elements are not met. *See Deering Precision Instr., LLC v. Vector Distribution Sys., Inc.*, 347 F.3d 1314, 1324 (Fed. Cir. 2003). Thus, there can be no patent infringement where the formula does not contain between 20% and 99% water and a thickening agent well over the claimed amount. If Plaintiffs contend that some other formula is at issue in this case, they should provide a more definite statement as to the formula at issue.

Plaintiffs alleged "upon information and belief" that "Corporate Defendants" hold themselves out as offering procedures that use the "Loria Method and Loria formula" or words

to that effect. (Dkt. 1 at ¶ 86). This allegation cannot establish a claim of patent infringement. As a result, Defendants respectfully submits that Count VII should be dismissed or, at the very least, Plaintiffs should provide a more definite statement as to the rights held by the Unassigned Loria Parties and specifying the formula at issue so that Defendants can respond in good faith.[3]

### vi. Count VIII for Inducing Patent Infringement Fails because the Patent Infringement Claim Fails

In order to establish a claim for induced infringement, the patentee must show that: (1) there has been direct infringement; (2) the alleged infringer knowingly induced infringement; and (3) the alleged infringer possessed specific intent to encourage another's infringement. *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369, 1378 (Fed.Cir.2005). A party may be found liable for induced infringement when it sells a product and provides instructions on how to use it in an infringing manner. *Golden Blount, Inc. v. Robert H. Peterson Co.,* 438 F.3d 1354, 1360 (Fed.Cir.2006); *see also Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 936, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005); *Zamora Radio, LLC v. Last.FM, Ltd.*, 758 F. Supp. 2d 1258, 1264 (S.D. Fla. 2010)

The Court need look no further than the first element set forth in the *Zamora Radio LLC* analysis to determine whether the Mezzancellos induced patent infringement to determine that this cause of action fails as a matter of law. Where, here, there is no evidence of -- or even sufficient allegation constituting -- "direct infringement" there can be no cause of action for inducement of said patent infringement. Unless and until Plaintiffs can sufficiently state a cause of action for patent infringement, Count VIII for inducing patent infringement fails as a matter of law, and therefore must be dismissed.

---

[3] It may be possible that Plaintiffs did not perform a proper pre-suit investigation to determine what formulation Defendants were actually using.

**vii.** <u>**Count IX for Trade Secret Misappropriation Should Be Dismissed Or A More Definite Statement Should Be Provided**</u>

Under Florida law, a "plaintiff must, as a threshold matter, establish that the trade secret exists. To do so, it must disclose the information at issue." *Revello Med. Mgmt., Inc. v. Med-Data Infotech USA, Inc*., 50 So. 3d 678 (Fla. 2d DCA 2010). "The term trade secret is one of the most elusive and difficult concepts in the law to define." *Furmanite America, Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134 (M.D. Fla. 2007). However, a "party proceeding under FUTSA need only describe the misappropriated trade secrets with 'reasonable particularity.'" *Treco Intern. S.A. v. Kromka*, 706 F. Supp. 2d 1283 (S.D. Fla. 2010).Without identifying the specific trade secret at issue, it is impossible to determine whether the party pled each of the elements of a trade secret, which are: (1) "information"; (2) that "derives independent economic value" "from not being generally known"; (3) that is "not readily ascertainable by proper means"; and (4) "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Section 688.02 (4)(a)-(b), Florida Statutes. While it is oftentimes difficult to describe a trade secret without divulging its confidential characteristics, Florida courts require "[a] party proceeding under Florida's Uniform Trade Secrets Act [to] only describe the misappropriated trade secrets with reasonable particularity." *Textile USA, Inc. v. Diageo N. Am., Inc.*, 2017 WL 10187642 (S.D. Fla. July 31, 2017). In essence, a Plaintiff must "show a trade secret was involved and to give the defendant notice of the material it claims constituted a trade secret." *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 848 (11th Cir. 2016) (*per curiam*).

District courts in the Eleventh Circuit have generally followed the *DynCorp* decision in holding that a plaintiff sufficiently alleges a misappropriation claim when a complaint identifies trade secrets related to specific clients, competitors, and projects. See, e.g., *Developmental Techs., LLC v. Mitsui Chems., Inc.*, No. 8:18-cv-1582-T-27TGW, 2019WL1598808, at *3 (M.D.

17

Fla. Apr.15, 2019) (holding that the complaint sufficiently stated a claim for misappropriation because it identified several categories of confidential and proprietary information, including photographs of active tests, system configurations, and visual demonstrations); *Sentry Data Sys., Inc. v. CVS Health*, 361 F. Supp. 3d 1279, 1294 (S.D. Fla. 2018) (holding that the complaint sufficiently stated a claim for misappropriation because it identified specific trade secrets, including a Pharmacy Service Agreement template, proprietary software programs, and proprietary configurations and data specifications of software). However, the Complaint must contain *factual* allegations, taken as true, to show that the misappropriated information constitutes a trade secret within the meaning of the FUTSA. *Dyncorp* at 850. Factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n]'- 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir.2012) (internal quotation marks and citations omitted).

Here, the allegations of Count IX fall short of what is required under the pleadings standards. Count IX asserts that Plaintiffs provided trade secret information in the form of a)

procedure room and equipment lists; b) hands-on and video trainings; c) suppliers, compounding and record keeping, d) marketing and patient intake and e) in-person medical training. (Dkt. 1 at ¶ 104). Plaintiffs allege that "medical providers licensed by Plaintiffs were provided and required to attend multi-day in-person training, monitor and participate in a number of actual procedures performed and that "the video library made available to licensees and the hands-on in-person training comprise a distillation of 14 years and thousands of hours or experience..." (Dkt. 1 at ¶¶ 104, 105). Yet, these allegations cut directly against the undisputed allegation that the "Physician Doctors" never entered into any licensee agreement with Plaintiffs. So here, in effect Plaintiffs claim that this "trade secret" information in the form of in-person training and the video library preserved for "providers licensed by Plaintiffs" was freely shared with non-licensees such as several of the Defendants named herein.

Essentially, this theft of trades secrets count is a repacking of the deficiently plead breach of contract counts relying on the provisions of those agreements, if they even exist, which deal with "Confidential Information" and "Trade Secret" as described in the various agreements the Plaintiffs have alleged exist. Arguably, the most detail about trade secrets is included in Paragraph 104 of the Complaint which lists the five categories of secrets; however this is nothing more than a list of broad categories. This is not sufficient in the Southern District nor in the Eleventh Circuit. Indeed, many courts have found that broad and generic categories of information do not qualify as providing sufficient notice as to the actual trade secrets allegedly misappropriated. *See Am. Registry, LLC v. Hanaw*, No. 2:13-cv-FTM-29, 2013 WL 6332971, at *3 (M.D. Fla. Dec. 5, 2013) ((quoting *Treco Int'l S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1286 (S.D.Fla. 2010)); *see also Medafor, Inc. v. Starch Med., Inc.*, No. 09-cv-0441PJS/FLN, 2009 WL 2163580, at *1 (D. Minn. July 16, 2009)("Medafor's descriptions of its trade secrets and

'Confidential Information' are insufficient to inform Starch Medical of the basic fact of what exactly it is supposed to have stolen or unlawfully obtained. The complaint describes the trade secrets at issue as 'business methodologies, formulas, devices, and compilations of information . . .' This description is so broad as to be meaningless."). Plaintiffs' descriptions are likewise meaningless in the grand scheme of the claims brought against Defendants.

Furthermore, "[i]n a trade secret action, the plaintiff [also] bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy." *M.C. Dean, Inc. v. City of Miami Beach, Fla.*, No. 16-cv-21731, 2016 WL4179807, at *4 (S.D. Fla. Aug. 8, 2016), quoting *Am. Red Cross v. Palm Beach Blood Bank, Inc.*,143 F.3d 1407, 1410 (11th Cir. 1998).

Here, the recitation of efforts to maintain secrecy is a recitation that Plaintiffs require confidentiality agreements to obtain access to the trade secrets, do not publish the trade secrets in medical journals or present them at conference and that they do not otherwise disclose them to the public. No further detail is provided anywhere in the Complaint.[4] Even taking these statements as true, Plaintiffs allegations are not sufficient to establish that "reasonable steps" have been taken to protect the secrecy of the data described.

Moreover, it appears from the Complaint that Plaintiffs' primary basis for bringing the trade secret claim is that the Physicians Defendants have continued to perform male enhancement procedures using product sourced elsewhere than from Plaintiffs. It should be noted that this product must be the same material described in the 578 Patent because otherwise the patent infringement claim must fail based on Plaintiffs allegations. Beyond that, the remaining

---

[4] What data security standards are used? What do the provisions in these agreements require? Are the licensing agreements and nondisclosure agreements enforceable?

information claimed to be trade secrets amount to generic categories of information (marketing plans, suppliers, operational policies and procedures), none of which are identified with enough specificity for Defendants to identify the material that forms the basis of the trade secret misappropriation claim. As a result, it is respectfully urged that Count IX be dismissed.

**viii.** **Count X for Tortious Interference Should be Dismissed Or A More Definite Statement Should Be Provided**

As to the cause(s) of action for tortious interference alleged by the Plaintiff, the Complaint continues its pattern of inappropriate blending by alleging vague and conclusory allegations and attempting to apply those allegations to two causes of action listed together as Count X entitled Tortious Interference by Mezzancellos. Count X sets forth the elements for tortious interference with a contract (Dkt. 1 at ¶117) followed by a recitation of the elements for tortious interference with a business relationship (Dkt. 1 at ¶118). It would therefore appear that Plaintiffs' Complaint is attempting to improperly assert these two causes of action under one single count in the Complaint. Beyond this "shotgun pleading" approach with elements of two causes of action alleged as part of Count X, the ensuing factual allegations which follow contain vague and conclusory facts not sufficiently specific to nor satisfying of the elements for either tortious interference with a contract or tortious interference with a relationship. (Dkt. 1 at ¶¶ 119-121). Accordingly, Count X of the Complaint as alleged fails as a matter of law as the Complaint does not sufficiently state a claim for "tortious interference."

**ix. Count XI is Duplicative of Count I**

Count XI asks for a declaration that the Separation Agreement served to release certain under its terms. However, no such declaration is needed as this is not an item of dispute as the Separation Agreement clearly contains a broadly worded release. That release, in fact, serves as part of the basis for the requested dismissal of Count I. Count XI further requests a declaration

excusing Plaintiffs from obligations of the Separation Agreement due to an alleged breach of that Agreement, it is self-evident that this relief is clearly subsumed by any alleged breach of contract count and cannot be resolved separate from the breach of contract claim. Therefore, Count XI, as currently plead should be dismissed.

### III.   <u>CONCLUSION</u>

For the reasons stated above, Defendants respectfully requests that the Complaint be dismissed in its entirety or, alternatively, that Plaintiff provide a more definite statement as to the claims it is bringing against Defendant.

Dated: May 20, 2024

By: */s/ Cole Carlson*
Cole Carlson
Florida Bar No. 112863
Carlson IP Law, LLC
503 E Jackson Street
Suite 901
Tampa, FL 33602
Tel: 813-445-5175
Email: cole@carlsoniplaw.com

-And-
Stefan V. Stein
Florida Bar No. 300527
SteinPatent, PA
P.O. Box 21205
Tampa, Florida 33622
Tel: 813-760-9205
Email: stefan.stein@steinpatent.com

-And-

Jason A. Stewart (*pro hac vice* forthcoming)
The Law Offices of Neal Brickman, P.C.
420 Lexington Ave., Ste 2811
New York, NY 10170
jason@brickman.com
(212) 986-6840

*Attorneys for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

     I, the undersigned, hereby certify that on this May 20, 2024, a copy of the foregoing was electronically filed using the Court's CM/ECF filing system, which will send electronic notification to all counsel of record in this matter.

Dated: May 20, 2024

                                   */Cole Carlson/*
                                   Cole Carlson